**CHATEAU CAFE, Inc., Appellant, v. DEPARTMENT OF LIQUOR CONTROL et, Appellees.**

Common Pleas Court, Franklin County.

No. 188783. Decided April 23, 1954.

466

Louis E. Freedman, Cleveland, for appellant.

C. William O'Neill, Atty. Genl., Kiehner Johnson, Asst. Atty. Genl., Columbus, for appellees.

## OPINION

By CLIFFORD, J.

This appeal arises from an order and findings of the Board of Liquor Control rejecting an application for Classes D-1 and D-2 permits. The order appealed from is set forth as follows:

"This cause coming on for hearing on an appeal of Chateau Cafe, Inc., 1532 Crawford Road, Cleveland, Ohio, from an order of the Director of Liquor Control rejecting an application for Classes D-1 and D-2 permits, was submitted to the Board of Liquor Control on the evidence, and on consideration thereof said Board finds that the appellant is not the owner or operator of a restaurant or lunch stand and for that reason the application for renewal of Classes D-1 and D-2 permits should be rejected.

"It is therefore ordered that the within appeal be, and the same hereby is, dismissed."

The Department of Liquor Control refused and rejected said application for the following reasons:

"Sec. 4303.13 R. C., provides in part as follows:

" 'Permit D-1 may be issued to the owner or operator of a

hotel or restaurant licensed pursuant to §3731.01 R. C., or of a club, amusement park, drugstore, lunch stand, boat, or vessel, * * *'

"Sec. 4303.13 R. C., provides in part as follows:

" 'Permit D-2 may be issued to the owner or operator of a hotel or restaurant licensed pursuant to §3731.01 R. C., or of a club, boat, or vessel, * * *'

"Sec. 4301.01 (B) (13) R. C., defines restaurant as follows:

" 'Restaurant' means a place located in a permanent building provided with space and accommodations wherein, in consideration of the payment of money, hot meals are habitually prepared, sold, and served at noon and evening, as the principal business of the place. * * *

"The department finds that the applicant is not the owner or operator of a restaurant at subject premises in that no food was on the premises at the time of departmental inspection, and said applicant was not prepared to serve food."

The facts are gathered from the testimony of Clifford Thompson, Field Inspector of the Department of Liquor Control, Fred Zahler, also an inspector for said Department, and Louis E. Freedman, statutory agent, attorney and keeper of the records of the appellant corporation. Said Thompson testified that he, on August 27, 1953, made a renewal inspection for D-1 and D-2 permits, at the premises of the Chateau Cafe, located at 1532 Crawford Road in Cleveland, Ohio, and found a gas stove in the kitchen, which was disconnected, and that there was no food. Said Zahler testified that he, about the first of October, after the renewal inspection had been made, made a food check of said permit premises, and found a stove there that was disconnected, and that there was no food on the premises or any means of preparation. And, said Freedman graphically testified as follows:

"My name is Louis E. Freedman. I am a statutory agent for the Chateau Cafe, a Corporation, and also its attorney. I also keep all of the records of the Company.

"MR. KREBS: All right.

"MR. FREEDMAN: I had sent in an application for renewal of a D-1 and a D-2 permit of the Chateau Cafe. We had two iceboxes back there, which, during the summer time, we have quite a considerable amount of trouble with. **The iceboxes were pulled out, although there was a cooling system for the beer and things like that. We had a manager, of course, in there, and one of these iceboxes was pulled out at the time of this permit renewal.** The Inspectors came around, and they were still disconnected. It was true, there being no iceboxes there, and we were going to put in there entire new units. I think if the Department would inspect it now, **there**

468

are new refrigerators, and all facilities for food. **It so happens at the time of the inspection, we had no refrigerator.**

"MR. KREBS: Was that in September or October?

"MR. FREEDMAN: **It was in October?**

"MR. KREBS: How about August?

"MR. FREEDMAN: **We had no refrigeration.** We had it off and on for the most time, and meats would spoil, and we would throw it away, so **finally we pulled out the refrigerators entirely,** and left it that way until **we got new refrigeration in.**

"MR. SCHUESSLER: **When did your permits expire?**

"MR. FREEDMAN: **I don't think our permits have expired as yet,** if I'm not mistaken.

"MR. FREEDMAN: There was another inspector that came in there afterwards, and who he was I have never been able to find. He came in and checked it, and said it was O. K.

"MR. KREBS: Is the place operating now?

"MR. FREEDMAN: **The place is operating now,—full facilities for food.**

"MR. SCHUESSLER: One thing I can't understand: How long had you been operating without restaurant facilities? without serving food, to August 27?

"MR. FREEDMAN: I don't think very long; **maybe two or three days or a week at most, when the iceboxes were taken out.** As the Inspectors say, when they were in there, there were no iceboxes.

"MR. SCHUESSLER: How did you keep your beer cold?

"MR. FREEDMAN: We have **cabinets for ice, and also some refrigeration for beer.**

"MR. KREBS: Anything else?

"MR. FREEDMAN: That's all."

From the testimony of all three of said witnesses, this Court finds that there is but one ultimate conclusion of fact upon which reasonable minds cannot differ, namely, that the permit holder is the owner or operator of a restaurant but that there was a temporary breakdown in the operation of its business; during which gap it was not able to serve food. i. e. hot meals at noon and evening as its principal business, due solely to a broken-down refrigeration system; and at the time of the hearing before the Board, there were new refrigrators and all facilities for food. The Court further finds that the finding of the Board that "the appellant is not the owner or operator of a restaurant * * *" is manifestly against the weight of the evidence.

We quote from **Volume 1, O. Jur. (2d)** under the title "**Administrative Law and Procedure," Section 190, page 583:**

"Adjudication under Administrative Procedure Act.—The

Administrative Procedure Act provides that in regard to an adjudication order the court may determine whether it is supported by reliable, probative, and substantial evidence.

"Under this statute the court merely determines whether there was sufficient evidence to sustain the finding of the administrative agency. It applies the test which is appropriate in civil appeals and determines whether the administrative action was against the manifest weight of the evidence. It is not limited to determining whether the agency abused its discretion."

In **Volume 1, O. Jur. (2d)** under the same heading, we quote from **page 580, Section 188:**

"The general rule is that administrative orders and findings will not be disturbed unless they are against the manifest weight of the evidence or not supported by any substantial evidence, even though the court should conclude that it was against the greater weight of the evidence. However, findings and orders will be reversed and set aside where there is no substantial evidence to support them."

When we apply these legal pronouncements to the facts of the appeal now before us, we have no hesitancy in finding, and holding, that the order appealed from **is not** supported by reliable, probative and substantial evidence. and therefore, **is not** in accordance with law. The order of the Board is reversed.